KELLIS, Appellant,

v.

OHIO PETROLEUM UNDERGROUND STORAGE TANK
RELEASE COMPENSATION BOARD, Appellee.

[Cite as *Kellis v. Ohio Petroleum Underground Storage
Tank Release Comp. Bd.* (1994), 94 Ohio App.3d 89.]

Court of Appeals of Ohio,
Montgomery County.

No. 14223.

Decided March 30, 1994.

*James D. Rupert,* for appellant.

*Lee Fisher,* Attorney General, and *James J. Leo,* Assistant Attorney General, for appellee.

WOLFF, Judge.

John C. Kellis appeals from the judgment of the Montgomery County Court of Common Pleas affirming the Petroleum Underground Storage Tank Release Compensation Board's decision denying his application for coverage under the Financial Assurance Fund.

The undisputed facts of this case are as follows.

In 1989, the Ohio General Assembly created the Petroleum Underground Storage Tank Release Compensation Board ("board"). The board was established to administer the Petroleum Underground Storage Tank Financial Assurance Fund ("fund"), a fund created to reimburse owners and operators of underground storage tanks ("USTs") for the costs associated with the clean-up of releases of petroleum into the environment and to compensate third parties for bodily injury and property damage resulting from such releases. In order to provide the capital necessary for the fund, the legislature also authorized the board to assess a mandatory, annual fee on the owners and/or operators of USTs.

John C. Kellis is an owner and operator of five USTs in Germantown, Ohio. As such, Kellis is subject to the mandatory fee requirements assessed by the board. In 1989, Kellis received, at his Germantown, Ohio address, a form letter from the Ohio Fire Marshal, Bureau of Underground Storage Tank Regulations. This letter informed all UST owners and operators of the creation of the fund and indicated that the Fire Marshal was implementing the fund until the board became operational. The letter provided a brief summary of the fund and informed UST owners of the annual per-tank fee requirement and the method for paying that fee for the 1989 program year. The letter further stated that "[a]fter the 1990 annual fee of $150 per tank is collected by the board July 1, 1990, the board will establish future annual fees and deductible amounts by rule." Enclosed with the letter was a fee statement form, which the UST owners were instructed to complete and return with their fee payment for 1989. The letter indicated that "future newsletters and flyers produced by the State Fire Marshal and the board will fully explain the fund and other provisions of the legislation. In the meantime, completing and returning the statement will ensure that your

fee payments are properly recorded, and ensure that you receive future correspondence." The letter included citation to the relevant statutes and phone numbers, which the owners could call with questions.

Kellis filled out the fee statement form, indicating that he was the owner of USTs in Germantown, Ohio, and listing his new address in Hillsboro, Ohio. Kellis then returned this form and a check for the fee amount associated with three of his five USTs to the board. Kellis did not send payment for the fees associated with the remaining two USTs, because he mistakenly believed that fees were required only for USTs which contained gasoline, and the USTs for which he did not pay a fee contained kerosene and waste oil.

Despite the Fire Marshal's assurances in its letter that receipt of the 1989 fee payment and a completed fee statement form would ensure that the UST owner would receive future correspondence which would fully explain the fund and other provisions of the legislation, Kellis never received any such correspondence.

Kellis failed to pay the required UST fees due on July 1, 1990 for the 1990 program year.

In 1990, Kellis decided to move four of the five USTs on his property. He contacted various environmental contractors and personnel at the Bureau of Underground Storage Tank Regulations for a removal permit. Upon receipt of the permit, Kellis had the tanks removed. On July 11, 1991, during the removal of the tanks, an environmentalist confirmed that the soil around the tanks was contaminated by gasoline.

On August 21, 1991, Kellis filed an application for fund assistance, seeking reimbursement for the costs associated with the clean-up of his property. On October 31, 1991, the executive director of the board sent a letter to Kellis indicating that he was unable to find evidence that Kellis had paid the required UST fees into the fund for the 1990 program year and asking Kellis to provide the board with evidence of payment. On January 13, 1992, the executive director of the board sent a letter to Kellis denying his application for fund assistance. The letter stated that Kellis was not entitled to participate in the fund because at the time the petroleum release was first suspected or confirmed he had not paid the mandatory fee for the 1990 program year and, therefore, did not possess a valid certificate of coverage for that year. The letter further notified Kellis of his right to file an objection to this determination and to a hearing.

On January 24, 1992, Kellis filed objections to the board's determination and asserted that his failure to pay the fees in a timely manner resulted from the board's failure to notify him that any additional payments were required. Kellis further stated that any information sent to him by the board was sent to his previous address despite the fact that the board had in its possession his 1989 fee

statement form which listed his correct address. On February 6, 1992, Kellis sent his UST fee payments for the 1990 and 1991 program years, including back payments for the two tanks not previously assured, and late penalty fees to the board.

On April 21, 1992, a formal evidentiary hearing concerning Kellis' fund eligibility was held before a hearing officer. On July 16, 1992, the hearing officer recommended that Kellis be granted coverage. However, on September 1, 1992, the board voted to reject the hearing officer's recommendation, and the board subsequently issued an order denying coverage.

Kellis appealed this order to the Montgomery County Court of Common Pleas. The matter was referred to a referee who, after hearing the case, recommended that Kellis be granted eligibility. The board filed objections to the recommendation. The trial court sustained these objections and affirmed the board's decision denying coverage to Kellis. In its decision, the trial court reasoned that, as a result of his failure to pay the fees associated with all of his USTs, Kellis never had a valid certificate of coverage and was, therefore, not entitled to participate in the fund.

Kellis appeals and asserts one assignment of error:

"The trial court erred in finding the Petroleum Underground Storage Tank Release Compensation Board's adjudication order to be in accordance with the law."

Kellis asserts that the trial court erred in determining that he was not entitled to participate in the fund. Specifically, Kellis contends (1) that the trial court improperly considered the issue of whether his failure to insure all of his USTs justified the board's decision denying coverage, because this issue was not raised at any of the earlier proceedings, and (2) that he is entitled to participate in the fund because the board's failure to notify him of the fee requirements and of his noncompliance with those requirements, in effect, made his late payments into the fund timely and made him eligible to participate in the fund. Finding this later contention to be dispositive, we will consider it first.

R.C. 3737.92 establishes the eligibility requirements for persons seeking to obtain fund payment or reimbursement for the costs of corrective action associated with an accidental release of petroleum and states in pertinent part:

"(B) A responsible person seeking to obtain from the fund payment * * * or reimbursement * * * shall submit a claim to the board * * *. Before authorizing any disbursement from the fund * * *, the director of the fund shall first determine that the claim meets all of the following criteria:

"(1) The responsible person is eligible under division (D) of this section to receive payment of or reimbursement for the corrective action costs from the fund;

" * * *

"(D) A responsible person is not eligible to receive payment or reimbursement from the fund * * * unless all of the following conditions are met:

"(1) At the time that the release was first suspected or confirmed, a responsible person possessed a valid certificate of coverage issued by the board * * * for the petroleum underground storage tank system from which the release occurred[.]"

Certificates of coverage may only be issued by the board in accordance with R.C. 3737.91(D), which states as follows:

"(D)(1) The board shall issue a certificate of coverage to any responsible person who has complied with both of the following:

"(a) Paid the fee assessed * * *;

"(b) Demonstrated to the board financial responsibility * * *."

■ Thus, one must, *inter alia*, pay the UST fees assessed by the board in order to obtain a valid certificate of coverage. Only those persons possessing such a certificate at the time the petroleum release was first suspected or confirmed are eligible to receive compensation from the fund for their clean-up costs.

In this case, it is undisputed that the petroleum release which occurred on Kellis' property was first suspected and confirmed on June 11, 1991, during the 1990 program year which runs from July 1, 1990 until June 31, 1991. It is also undisputed that Kellis did not pay the UST fees associated with this property for the 1990 program year before July 1, 1990, the statutory deadline for such payments. R.C. 3737.91(B) ("The fee shall be paid not later than the first day of July of each year * * *."). Therefore, Kellis was not issued and did not possess a certificate of coverage for the 1990 program year. Hence, pursuant to R.C. 3737.92(D)(1), Kellis was not eligible to receive any payment or reimbursement from the fund for any costs associated with the clean-up.

However, Kellis argues that his failure to pay his UST fees in a timely manner should be excused in this case because the board failed to notify him of (1) the amount of the fee assessed in 1990 and (2) the fact that he had failed to comply with the fee requirements. Kellis contends that the board's failure to notify him of these facts resulted in his failure to pay the 1990 fees and that his payment of all the required fees in 1992, after he received such notification, should be

considered timely and enable him to participate in the fund. We will consider each of these arguments in turn.

## A. NOTIFICATION OF FEE AMOUNT

In support of his assertion that the board's failure to notify him of the amount of the 1990 fees should excuse his untimely payment of those fees, Kellis argues that such notice was (1) necessary because the board maintains discretion to waive or otherwise change the fee for any given year and (2) mandated by R.C. 3737.91(B). Without such notice, Kellis argues that UST owners could not be sure of the fee amount, if any, for any given program year.

■ While Kellis' argument in favor of notification of the fee amount seems reasonable, given that one cannot be expected to pay a fee the amount of which he does not know, it is not relevant in this case for two basic reasons. First, the fees assessed for the 1990 program year were statutorily set at $150 per UST. R.C. 3737.91(B) ("The amount of the annual fee due in 1989 and 1990 is one hundred fifty dollars per tank per year."). The board did not possess any discretion to change or waive that fee for 1990. Therefore, there was no need to notify the UST owners of the fee amount for that year. Moreover, the UST owners in general, and Kellis in particular, were notified of the 1990 fee amount in the form letter sent by the Fire Marshal in 1989.

Second, the board was not statutorily required to notify Kellis or the other UST owners of the amount of the 1990 annual fee because that portion of R.C. 3737.91(B) which requires such notification did not apply until the 1991 program year. Although R.C. 3737.91 became effective on July 11, 1989, the portion of the statute on which Kellis relies expressly exempts the notification requirement from the July 11, 1989 effectiveness date. That portion states:

"Not later than the *first day of May of 1991 and each subsequent year*, the board shall notify each responsible person by certified mail of the amount of the annual fee per tank due in that year" (Emphasis added.)

The delayed application of this notification requirement until the 1991 program year is logical, given the fact that 1991 was the first program year in which the board was authorized to alter or waive the fee amount. During the 1991 program year and thereafter, notification of the fee amount would be necessary in order for UST owners to discover what fee amount the board had decided to assess. However, as we stated *supra*, prior to 1991, the fee amount was statutorily set, and notice of the fee amount was neither necessary nor required by R.C. 3737.91(B).

For the aforementioned reasons, we find that the board was not required to notify Kellis of the fee amount for the 1990 program year, and its failure to do so could not excuse Kellis' untimely payment of his UST fees.

## B. NOTIFICATION OF NONCOMPLIANCE

We now consider Kellis' assertion that his payment of his 1990 fees in 1992 should be considered timely because the board failed to notify him that his failure to pay the fee put him in noncompliance of R.C. 3737.91. Specifically, Kellis asserts that the board was required to notify him of his failure to pay the required fee in 1990 pursuant to R.C. 3737.91(G) and that the board was required to send him a notice of violation pursuant to Ohio Adm.Code 3737-1-07(D) when it discovered in 1991 that he had failed to maintain fund eligibility. Kellis argues that the board failed to send him the required notices until 1992, and that his fee payment, which was made within thirty days of that notice, should be considered timely.

Because the notice requirements contained in R.C. 3737.91(G) and Ohio Adm. Code 3737-1-07(D) are separate and distinct, we will consider them separately.

### 1. Yearly Notice of Noncompliance

R.C. 3737.91(G) states in pertinent part:

"If the director of the fund determines that a responsible person has failed to comply with [the fee requirements] of this section, the director of the fund shall notify each responsible person * * * of the noncompliance. If, within thirty days after the notification, the responsible person fails to pay the applicable fee or any fee previously assessed * * *, the director of the fund shall issue an order requiring the responsible person to pay all of the fees he owes to the fund and an additional late payment fee in the amount of one thousand dollars to the fund.

"If a responsible person fails to comply with any order of the director of the fund within thirty days after the issuance of the order, the director shall notify the fire marshal of that noncompliance. Upon the request of the director of the fund, the attorney general may bring a civil action for appropriate relief * * *."

This section of R.C. 3737.91 became effective on July 11, 1989 and is, therefore, applicable to the fee payments due on July 1, 1990 for the 1990 program year.

■ The language of R.C. 3737.91(G) clearly requires the director of the fund to give notice to nonpaying UST owners once the director determines that they have failed to pay. It does not, however, require the director to make that determination on any particular schedule or, indeed, at all. Thus, this section is not designed to guarantee notice to nonpaying UST owners, but, rather, de-

scribes the steps the director can take to enforce collection of fees owed to the fund.[1]

■ Even were we to assume *arguendo* that R.C. 3737.91(G) does require notice in all situations where the responsible person fails to pay the mandatory UST fees, we would nonetheless have to find that the failure to give this notice does not toll the time for payment of those fees until such notice is sent.

In cases where the board has failed to notify a nonpaying owner of his noncompliance, R.C. 3737.91 prescribes only limited consequences. According to R.C. 3737.91(G), until the board has sent the initial notice of noncompliance to the owner, it may not issue an order requiring the owner to pay the delinquent fees plus an additional late fee, notify the Fire Marshal, or, arguably, request that the Attorney General bring a civil action against the owner. Kellis does not direct us to, and we have not found, any section of R.C. Chapter 3737 which prescribes any other consequences of the board's failure to notify the UST owner of his failure to pay the fees for any given program year. Nor does Kellis indicate any other statutory provision which generally prescribes the consequence of a failure to provide notice of noncompliance with a fee requirement. Apparently, the legislature has only assigned the limited consequences listed in R.C. 3737.91(G), and we cannot, under the guise of statutory interpretation, create others. See *State ex rel. Defiance Spark Plug Corp. v. Brown* (1929), 121 Ohio St. 329, 331–332, 168 N.E. 842, 842. Had the legislature intended to grant a tolling period, such as the one proposed by Kellis, as a result of the board's failure to provide notice of noncompliance, it would have specifically provided for such a consequence.

■ Moreover, were we to discard the principles of statutory interpretation and hold that a failure to notify a person of his failure to pay the mandatory UST fees tolls the time for payment of those fees, we would, in essence, be impermissibly applying the principles of equitable estoppel against a state agency. As a general rule, principles of estoppel do not apply against the state or its agencies in the exercise of a governmental function. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. The consequence which Kellis urges us to adopt in this case would create a situation where the failure of the board to notify a UST owner that he has failed to pay his fees for a given program year would estop the board from taking those actions which it would otherwise be permitted to employ in the case of noncompliance, *i.e.,* revoking

---

1. We note that Ohio Adm.Code 3737–1–04(D) also includes a notification requirement in the event that a responsible person fails to pay the fee by July first of the year in which the fee is imposed. In fact, this section is broader than R.C. 3737.91(G) in that it *requires* the director to give notice if the responsible person fails to pay and does not include the limiting language of R.C. 3737.91(G), *i.e.,* "[i]f the director ... determines." However, Ohio Adm.Code 3737–1–04(D) became effective on August 1, 1990 and is, therefore, not applicable to this case.

certificates of coverage or denying fund eligibility. This result is contrary to both the plain language of the statute and the long-established principle that estoppel does not lie against the state.

Accordingly, we find that even were the board required by R.C. 3737.91(G) to notify Kellis of his failure to pay the UST fees for the 1990 program year, its failure to do so does not toll the time for payment of those fees or make otherwise untimely payments timely.

## 2. Notice of Violation

We turn now to Kellis' final contention that the board's failure to issue him a notice of violation pursuant to Ohio Adm.Code 3737–1–07(D) eliminated his opportunity to cure his noncompliance and thereby recover his eligibility to participate in the fund.

We find this contention to be without merit.

Ohio Adm.Code 3737–1–07 establishes the criteria for establishing fund eligibility for corrective action costs and states in pertinent part:

"(B) A responsible person *determined eligible * * * * * for fund payment or reimbursement *may maintain eligibility* to the fund by:

"(1) Maintaining all records required to be kept by this chapter;

"(2) Paying all annual and supplemental fees and penalties, if assessed;

"(3) Maintaining compliance with all state and federal regulations relating to underground storage tanks.

" * * *

"(D) Whenever the director has reason to believe that a responsible person *determined eligible to claim against the financial assurance fund * * * has failed to maintain fund eligibility pursuant to division (B) of this rule,* the director shall issue a notice of violation. The responsible person shall have thirty days from receipt of such notice to either provide evidence of compliance with all fund eligibility requirements or take all necessary steps to correct such violation. If, after thirty days from receipt of notice of the violation, the director shall revoke any certificate of coverage currently in effect and issue a determination of fund ineligibility immediately nullifying any previously-determined eligibility for disbursement from the financial assurance fund." (Emphasis added.)

█ Thus, Ohio Adm.Code 3737–1–07(D) applies only to situations in which the board has determined that a person is eligible to participate in the fund. The rule establishes the criteria for maintaining fund eligibility and prescribes the consequences of failing to meet those criteria. The rule does not pertain to situations, such as the one involved in this case, where a person has never been

determined to be eligible to participate in the fund and has been denied fund eligibility for failing to comply with the fee or other requirements of R.C. 3737.91.

■ Moreover, Ohio Adm.Code 3737–1–07(D) does not apply to fee payment requirements for the 1990 program year because it did not become effective until August 1, 1990, one month after the fee payments for the 1990 program year were due.

Thus, we find that the board was not required to issue a notice of violation to Kellis, and Ohio Adm.Code 3737–1–07(D) did not entitle him to cure his untimely payment of his UST fees or to participate in the fund.

Accordingly, we find that Kellis was not entitled to notice of the fee amount for the 1990 program year or to a notice of violation. We further find that although the board may have been required to notify Kellis of his failure to pay the UST fees required for the 1990 program year, its failure to do so has no statutory consequences and cannot be said to toll the time for payment of those fees or to otherwise excuse the untimely payment of those fees. Having failed to pay the fees assessed for the 1990 program year, Kellis was not issued a certificate of coverage for 1990 and was not eligible for fund assistance for the accidental petroleum release which was first suspected and confirmed during that year. Therefore, the board properly denied his request for fund assistance, and the trial court properly affirmed its decision to deny coverage.

Having determined that Kellis was not eligible for fund assistance due to his failure to pay the required fees in a timely manner, we need not consider whether the trial court properly determined that Kellis was also not eligible for fund assistance on the basis of his failure to insure all five of his USTs.

The judgment of the Montgomery County Court of Common Pleas will be affirmed.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.