KIRWEN, Appellee,

v.

**PETROLEUM UNDERGROUND STORAGE TANK RELEASE
COMPENSATION BOARD, Appellant.**

[Cite as *Kirwen v. Petroleum Underground Storage Tank
Release Comp. Bd.* (1994), 95 Ohio App.3d 323.]

Court of Appeals of Ohio,
Sandusky County.

No. S–93–33.

Decided June 30, 1994.

*Ronald Mayle,* for appellee.

*James J. Leo,* for appellant.

---

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Sandusky County Court of Common Pleas which reversed the finding of the Ohio Petroleum Underground Storage Tank Release Compensation Board ("board") and found that appellant is eligible to participate in the financial assurance fund for the 1989 program year. The board has appealed setting forth the following assignments of error:

"I. The trial court improperly held that, by not promulgating a rule concerning the extension cut-off date, the board violated appellee's due process rights.

"A. Due process rights were not violated since appellee had no right or entitlement beyond those which the legislation offered.

"B. Even if appellee had a property right to the extension, a procedural due process violation does not exist since he (appellee) could have protected the right.

"II. The denial of fund eligibility to owners or operators who did not pay fees prior to the extension cut-off date does not violate equal protection since such a policy does not create a suspect class and bears a rational basis to a legitimate government objective."

The undisputed facts giving rise to this appeal are as follows. Effective July 11, 1989, R.C. 3737.90 to 3737.99 were enacted to create the Ohio Petroleum Underground Storage Tank Release Financial Assurance Fund ("fund"). The purpose of the legislation was to provide insurance coverage for the costs of corrective action and compensation for third parties for injury and damage associated with the accidental release of petroleum from underground storage tanks. See R.C. 3737.92(B). R.C. 3737.90 establishes the board to administer this fund and delineates its functions and authority.

For the purpose of financing the fund, R.C. 3737.91(B) provides that a mandatory annual fee is to be "assessed * * * on each tank comprising an underground petroleum storage tank or an underground storage tank system that contains or has contained petroleum and for which a responsible person is required to demonstrate financial responsibility by rules adopted by the fire marshal under division (B) of section 3737.882 of the Revised Code."

Although R.C. 3737.91(B) establishes a due date of July 1 of each year for payment of the annual fee, it also provided that for the first program year, July 1989 to July 1990, the payment due date would be October 9, 1989.

R.C. 3737.91(D) goes on to state that:

"(1) The board shall issue a certificate of coverage to any responsible person who has complied with both of the following:

"(a) Paid the fee assessed under division (B) or (F) of this section;

"(b) Demonstrated to the board financial responsibility in compliance with the rules adopted by the fire marshal under division (B) of section 3737.882 of the Revised Code for the deductible amount established under division (E) of this section or, when appropriate, the reduced deductible amount established under division (F) of this section."

R.C. 3737.92 governs reimbursement to responsible parties under the fund and provides in pertinent part:

"(D) A responsible person is not eligible to receive payment or reimbursement from the fund under division (B) or (C) of this section unless all of the following conditions are met:

"(1) At the time that the release was first suspected or confirmed, a responsible person possessed a valid certificate of coverage issued by the board under division (D) of section 3737.91 of the Revised Code for the petroleum underground storage tank system from which the release occurred;

"(2) One of the following applies:

" (a) The petroleum underground storage tank system from which the release occurred was registered in compliance with rules adopted by the fire marshal under section 3737.88 of the Revised Code * * *."

Upon implementation of the program, the board, in an attempt to gain widespread compliance with the new law, extended the October 1989 deadline for payment of the 1989 program year fee and the July 1, 1990 deadline for payment of the 1990 program year fee and established December 15, 1990 as the final date for payment of the fees for eligibility for the 1989 and 1990 program years. In deciding to waive the statutory deadlines, the board in effect provided retroactive

coverage for the first two program years as long as payment of the fees was made by December 15, 1990.

In order to notify noncomplying owners and operators of this extension the board cross-referenced a list of underground storage tanks that had been registered with the State Fire Marshal's Office as required by law, against its list of complying tank owners. The board then sent out notices by certified mail that informed these owners or operators of the new law and its requirements.

The particular facts that were before the trial court as to appellee Kirwen are as follows. In 1958 Kirwen purchased property on which there was an underground petroleum storage tank. He used the tank until August 15, 1989, when a neighboring resident complained of gasoline in his well water. An investigation was conducted by local and state fire authorities, who concluded that Kirwen's tank might be the source of the contamination. In September 1989 Kirwen had the tank removed. In February 1992 Kirwen became aware of the fund and the program and on February 24, 1992, he paid his fees for the 1989 and 1990 program years.

On April 6, 1992, Kirwen filed an application for corrective action costs associated with the 1989 release. On June 4, 1992, the board's executive director issued his determination in which he denied coverage, stating that Kirwen had not made timely payment to the fund for the 1989 program year, the year of the release, and that at the time the release was first suspected or confirmed, his tank was not registered with the State Fire Marshal. On June 10, 1992, appellee appealed the director's decision to the board and requested an administrative hearing. On January 12, 1993, a hearing was held pursuant to R.C. 119.09, 3737.91 and 3737.92. On January 14, 1992, the hearing examiner issued his report and recommendation in which he found the director's determination to be reasonable and lawful and supported by reliable, probative and substantial evidence. Appellee filed objections to the report and recommendation with the board and on April 20, 1993 the board issued its order in which it adopted the hearing examiner's report in its entirety. Appellee then filed a timely notice of appeal in the Sandusky County Court of Common Pleas. On August 19, 1993, that court issued its judgment entry in which it found that the decision of the board in November 1990 to accept no further fee payments for the program years 1989 and 1990 after December 15, 1990 constituted the promulgation of a rule, and therefore the procedure set forth in R.C. 119.03 should have been followed by the board; that, since R.C. 119.03 was not followed, the "rule" violated Kirwen's basic due process rights, since he was not provided the opportunity of notice or a hearing; and that the circumstances raised equal protection arguments, since owners of registered underground tanks were notified by certified mail, whereas others received no public notice as contemplated by R.C. 119.03. The court

reversed the decision of the board, finding that it was arbitrary, capricious, unreasonable, and not in accordance with the law. It is from that decision that appellant has appealed.

This court will consider appellant's assignments of error together. In support of its first assignment of error, appellant asserts that the board's failure to promulgate its rule as to the extension of the cutoff date was not a violation of Kirwen's due process rights, since there was no taking of a right or entitlement, and even if such a taking did occur, Kirwen had constructive notice of the law and its requirements. In support of its second assignment of error appellant asserts that the denial of fund eligibility to owners or operators who do not pay fees prior to the extension cutoff date does not violate their equal protection rights, since such a policy does not create a suspect class and bears a rational basis to legitimate government objective. Finally appellant argues that even if the board violated the statutory provisions by failing to promulgate a rule that extended the statutory deadline in accordance with R.C. 119, the penalty for not promulgating a rule would be the invalidation of the rule, and in that instance Kirwen's claim would also have been denied for his failure to meet the statutory deadline of October 1989.

Appellee Kirwen argues in response that appellant cannot legally refuse to provide him coverage on the basis that he paid his fee after the statutory deadline and after a discharge was suspected, when it has accepted payments from others that were made after the statutory deadline and after a release was suspected; that the board obviously recognized that owners could not possibly obtain a certificate of coverage by the statutory deadline (October 1989) and therefore waived the requirement that an owner possess a certificate of coverage at the time the release was first suspected and allowed late payments in lieu thereof; that the board never adopted a rule, as required by law, to limit late filings to a certain date or to give notice of the newly established cutoff date of December 15, 1990; and that he received no notice that the statutory deadline was waived or that it was waived only until December 15, 1990, and only received notice of his obligations under the new law in February 1992, and should be given a reasonable time thereafter for compliance.

On appeal this court's standard is to determine if the trial court abused its discretion in reversing the decision of the board. See *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 590 N.E.2d 1240.

Upon review of the entire record of proceedings in the trial court, it appears clear that, by waiving the original deadlines the board provided for retroactive coverage for the first two program years, as long as the fees owed were paid by December 15, 1990, despite the language of the statute that required that the fees

be paid before a release occurred or was suspected. By the means it used to determine who would receive notice of the deadline extension, the board created two classes of potential claimants for *retroactive* coverage: (1) those tank owners or operators who had registered their tanks with the Fire Marshal (which was required by law as early as 1987, Ohio Adm.Code 1301–9–04), had not complied with the new law by the original October 1989 deadline, but upon receiving notice paid their fees by the December 1990 deadline; and (2) those tank owners or operators who had not registered their tanks with the Fire Marshal as required by law and for whatever reason never became aware of the new program and its requirements, and did not comply with the requirements until after the December 15, 1990 deadline set for the first two program years. Kirwen is obviously a member of the second class. The fact that the Fire Marshal knew of his tank due to its involvement in the prior release and cleanup does not place him in the first class among those who had registered their tanks with the Fire Marshal. As to the equal protection issue, the record indicates that the board has consistently denied the claims for retroactive coverage for the first two program years that have been made by those who would fall under the second class.

■ It is apparent from appellee's assertions throughout this case that he is attempting to place the burden of notification on the board to make noncomplying tank owners or operators aware of the existence and requirements of the new law. This court finds, however, that it is up to the owners and operators of underground petroleum storage tanks to educate themselves as to the requirements of such ownership. Had Kirwen been in compliance with laws already in existence as to the registration of his tank with the Fire Marshal, he would have received the notices sent out by the board.

■ As to his assertions that the board did not follow the proper procedure in setting the December 15, 1990 deadline thereby violating the notice requirements of R.C. Chapter 119, we agree that the board, both in initially waiving the statutory deadlines of October 1989 and July 1990 and thereafter setting a final cutoff date for late fee payment, should have complied with the procedures set out in R.C. Chapter 119 as required by R.C. 3737.90. We cannot say, however, based upon all of the facts and circumstances of this case that such a failure resulted in a violation of appellee's constitutional right to due process, or that it raises equal protection implications, or that it requires reversal of the board's denial of eligibility. The board's failure to follow the provisions of R.C. 3737.90 was not the cause of appellee's lack of knowledge or notice of the law and his failure to comply therewith. Accordingly appellant's assignments of error are found well taken.

Upon consideration of the foregoing, this court finds that the trial court abused its discretion in reversing the board's denial of eligibility.

Upon consideration whereof this court finds that substantial justice has not been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed. Court costs are assessed to appellee.

*Judgment reversed.*

GLASSER, J., concurs.

MELVIN L. RESNICK, J., dissents.