SUN COMPANY, INC., Appellant,

v.

PETROLEUM UNDERGROUND STORAGE TANK RELEASE
COMPENSATION BOARD, Appellee.

[Cite as *Sun Co., Inc. v. Petroleum Underground Storage Tank
Release Comp. Bd.* (1999), 133 Ohio App.3d 449.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1287.

Decided May 28, 1999.

450

452

*David S. Hoffman* and *Michael R. Blumenthal*, for appellant.

*Betty D. Montgomery*, Attorney General, and *James Leo*, Assistant Attorney General, for appellee.

KNEPPER, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, which upheld the decision of appellee, the Petroleum Underground Storage Tank Release Compensation Board ("board"), denying the request of appellant, Sun Company, Inc., for reimbursement from the Petroleum Underground Storage Tank Financial Assurance Fund ("fund"). For the reasons that follow, we affirm the judgment of the trial court.

Appellant sets forth the following three assignments of error on appeal:

"First Assignment of Error

"There is Nothing in the Revised Code Authorizing Legislation Which Conveys the Authority to PUSTR to Deny Eligibility into the Fund to Applicants Who Have Not Paid Their Annual Fees Within the Statutory Deadline.

"Second Assignment of Error

"The Policy Promulgated by the PUSTR Board Extending the Deadline for Payment of Annual Assurance Fees for Program Years 1989 and 1990 was not Contrary to the Board's Authorizing and Implementing Statutes.

"Third Assignment of Error

"The Board's Denial of Appellant's Application for Fund Eligibility Violated Sun's Equal Protection Rights Under the Ohio Constitution."

The undisputed facts that are relevant to the issues raised on appeal are as follows. Leaking petroleum underground storage tanks ("USTs") are recognized as a major environmental hazard and a source of contamination of ground water in many states, including Ohio. Accordingly, the United States Environmental Protection Agency ("EPA") promulgated regulations requiring owners and operators of USTs to demonstrate financial responsibility for the clean up and remediation of such leaks and delegated to the individual states the opportunity to aid UST owners and operators in satisfying such requirements.

In response to the EPA regulations, the Ohio legislature created the fund to reimburse owners and operators of USTs for the costs associated with correcting and cleaning up releases of petroleum in the environment and to compensate third parties for any resulting bodily injury and/or property damage through the enactment of R.C. 3737.87 *et seq.*[1] Pursuant to R.C. 3737.91, the board is empowered to assess a mandatory annual "assurance fee" to UST owners and operators, and supplemental assessments as needed, to pay for implementing, administering, and enforcing the program, and to pay claims against the fund. The initial effective date of the statute was July 11, 1989, and the statutory deadline for the first assurance fee payment was October 9, 1989. Thereafter, the deadline established for the fees was July 1 of each program year.

On July 17, 1989, appellant discovered a release from its USTs at 732 Conant Street in Maumee, Ohio. On July 25, 1989, appellant discovered a release from its USTs at 2115 South Byrne Road in Toledo, Ohio. On November 2, 1989, appellant made its first fee payment to the board for the tanks at both the Byrne Road and Conant Street sites. On November 14, 1990, the board passed a resolution authorizing coverage for UST releases during the 1989 and 1990 program years ("resolution"), including those cases where the annual fee was not made prior to the discovery of a release, so long as the entire fee was paid by December 15, 1990. An undefined number of tank owners and/or operators received retroactive coverage pursuant to the resolution.

On June 12, 1996, the board rescinded the resolution, after determining that it had been passed in violation of R.C. 3737.91 and R.C. Chapter 119. On August 7, 1996, appellant submitted applications for reimbursement from the fund for clean-up costs associated with the UST releases at its Byrne Road and Conant Street sites. On November 27, 1996, the board denied both of appellant's applications on the basis that appellant had not timely paid its annual assurance fees for the 1989 program year.

On December 4, 1996, appellant filed an objection to the board's determination and requested an adjudicatory hearing on the matter; however, the parties later agreed to submit the appeal through briefs and a joint stipulation of facts. On November 27, 1997, after reviewing both parties' briefs and stipulations, Carol A. DeVore, the board's executive director, affirmed the board's earlier determination that appellant was not eligible for reimbursement from the fund because the fees were not timely paid to the board before the releases were discovered.

---

1. R.C. 3737.87 *et seq*, originally effective July 11, 1989, was in effect at all times relevant to this case. Although certain provisions of the statute have since been amended, the changes are not relevant to this case, and therefore are not cited in this opinion.

On December 3, 1997, appellant filed a notice of appeal in the Lucas County Court of Common Pleas pursuant to R.C. 119.12. On August 3, 1998, the trial court filed a judgment entry in which it found, based on the record of the administrative proceedings and the parties' briefs, that appellant is not entitled to reimbursement from the fund. Accordingly, the court affirmed the board's decision. On August 26, 1998, appellant filed a timely notice of appeal to this court.

We note at the outset that, in reviewing the factual determinations of an administrative agency, the court of common pleas "must determine whether the agency's order is supported by reliable, probative and substantial evidence." *Penske Truck Leasing Co. v. Petroleum Underground Storage Tank Release Comp. Bd.* (Sept. 19, 1995), Franklin App. No. 95APE02–226, unreported, 1995 WL 559956, citing *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268. The decision of the common pleas court will not be overturned on appeal absent a finding that the court abused its discretion. *Id.* See, also, *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. However, in cases where the issues raised on appeal involve the interpretation and application of pertinent statutes, the review of both the common pleas court and the court of appeals is plenary. *Penske, supra,* citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

Appellant asserts in its first assignment of error that the statutory requirements for reimbursement from the fund should be "flexibly" interpreted to allow retroactive coverage in this case. In support thereof, appellant argues that it could not have obtained a certificate for the 1989 program year because the board did not issue certificates for that year. Appellant further argues that the board "cannot deny coverage without serving notice to the responsible parties of noncompliance and providing them with an opportunity to correct the noncompliance."

It is a basic principle of statutory construction that unless a different intention appears in a statute, words in a statute shall be given their ordinary and natural meaning. *Layman v. Woo* (1997), 78 Ohio St.3d 485, 487, 678 N.E.2d 1217, 1218–1219, citing *State ex rel. Gareau v. Stillman* (1969), 18 Ohio St.2d 63, 47 O.O.2d 187, 247 N.E.2d 461. In addition, statutes that relate to the same subject are *in pari materia,* and should be read together "to ascertain and effectuate the legislative intent." *State v. Moaning* (1996), 76 Ohio St.3d 126, 128, 666 N.E.2d 1115, 1116.

As to the issue of eligibility, R.C. 3737.92(D) states that a UST owner or operator is eligible for reimbursement from the fund only if both of the following conditions are met:

"(1) At the time that the release was first suspected or confirmed, [an owner or operator] possessed a valid certificate of coverage issued by the board under [R.C. 3737.91(D)] for the [UST] system from which the release occurred;

"(2) One of the following applies:

"(a) The [UST] system from which the release occurred was [properly] registered * * * by the fire marshal under [R.C. 3737.88] when the occurrence of the release was first suspected or confirmed;

"(b) The fire marshal has recommended that payment or reimbursement be made because good cause existed for the [owner's or operator's] failure to have so registered the [UST] system, and the [owner or operator] has registered the [UST] system with the fire marshal and paid all back registration fees payable under those rules for registration of the system from the time the [owner or operator] should have, but failed to register the system."

Pursuant to R.C. 3737.91(D)(1), the board shall issue a certificate of coverage to any responsible person who has:

"(a) Paid the fee assessed under division (B) or (F) of this section;

"(b) Demonstrated to the board financial responsibility in compliance with the rules adopted by the fire marshal under [R.C. 3737.882(B)] for the deductible amount established under division (E) of this section or, when appropriate, the reduced deductible amount established under division (F) of this section."

■ Accordingly, timely payment of the mandatory assurance fee must be made before an owner or operator is entitled to a certificate, and a UST release is not covered unless a valid certificate was obtained by the owner or operator before such release was first suspected or confirmed. See *Kellis v. Ohio Petroleum Underground Storage Tank Release Comp. Bd.* (1994), 94 Ohio App.3d 89, 94, 640 N.E.2d 243, 246–247; R.C. 3737.91(D) and R.C. 3737.92(D).

It is undisputed that during the 1989 program year the board did not actually issue certificates of coverage; however, the board extended coverage to those owners or operators who made timely payments into the fund. It is further undisputed that appellant did not make timely payments to the fund for the 1989 program year.

■ As to the issue of notice, appellant correctly states that R.C. 3737.91(G) requires the director of the fund to notify an owner or operator that he is not in compliance with R.C. 3737.91(B), (C), or (F) before assessing any late fees or other civil penalties. However, the legislature inserted no such notice provision

in R.C. 3737.91(D) or R.C. 3737.92(D), which govern the eligibility of an owner or operator for reimbursement from the fund.[2] Accordingly, it is clear that the legislature intended for notice to be given before statutory penalties are assessed by the director pursuant to R.C. 3737.91(G), but not before reimbursement may be denied for nonpayment of fees pursuant to R.C. 3737.91(D) and R.C. 3737.92(D). See *Penske, supra* (Penalties assessed under R.C. 3737.91[G] are in addition to an owner's or operator's ineligibility for reimbursement pursuant to R.C. 3737.91[D] and R.C. 3737.92[D].). See, also, *Kirwen v. Petroleum Underground Storage Tank Release Comp. Bd.* (1994), 95 Ohio App.3d 323, 642 N.E.2d 432 (UST owners and operators are deemed to have notice of the statutory registration requirements, and may not escape liability for the nonpayment of fees by claiming that the director of the fund did not notify them of their noncompliance.).

This court has reviewed the entire record of proceedings that was before the trial court and, upon consideration thereof, finds, as a matter of law, that the trial court did not err by finding that appellant was ineligible for reimbursement from the fund because it did not pay the mandatory assurance fees before the statutory deadline had passed. · Accordingly, appellant's first assignment of error is not well taken.

■ Appellant asserts in its second assignment of error that it should be reimbursed from the fund because it paid the fees for the 1989 program year before the extended deadline of December 15, 1990. In support thereof, appellant argues that the board is estopped from denying reimbursement from the fund based on the revocation of its resolution extending the statutory deadline for the payment of fees.

■ Generally, the principle of estoppel may not be applied to governmental action taken by a state agency. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145–146, 555 N.E.2d 630, 632–634. However, appellant argues that the board's actions create an exception from the general rule, pursuant to *E.H. Mosher v. Internal Revenue Serv.* (S.D.Ohio 1989), 746 F.Supp. 709.

---

2. Appellant further asserts that a notice requirement should be imposed on R.C. 3737.91(D) pursuant to Section 280.109(a)(2), Title 40, C.F.R., which states that a provider of financial assurance may not cancel or fail to renew a state-funded "assurance mechanism" unless the provider gives sixty days' notice of such termination to an owner or operator. However, Section 280.109, Title 40, C.F.R. does not apply in this case for two reasons. First, appellant was never eligible for reimbursement from the fund for the two UST leaks that occurred in the 1989 program year because appellant failed to meet the initial statutory deadline for the payment of fees. Second, pursuant to Ohio law, payment of the assurance fees is mandatory, and participation in the fund may not be terminated.

In *Mosher*, a taxpayer who did not properly file his tax return was advised by an employee of the Internal Revenue Service to refile the return pursuant to an informal agency policy, and thereby avoid paying statutory penalties. The taxpayer complied with the policy, but, thereafter, was assessed penalties by the IRS. On appeal, the Federal District Court for the Western District of Ohio held that "on the very peculiar facts" of that case, the IRS was estopped from arguing that it had no obligation to invoke the informal policy after informing the taxpayer that he could avoid a penalty by complying with the policy. *Id.* at 713.

In contrast, in this case, the issue is not whether the board was initially obligated to adopt the resolution allowing for retroactive reimbursement from the fund. It is undisputed that the board discontinued its retroactive reimbursement policy because it determined that its adoption of the resolution was in violation R.C. 3737.91 and R.C. 3737.92. See *Kirwen, supra* at 328, 642 N.E.2d at 435–436; *Penske, supra.* Accordingly, appellant's reliance on *Mosher* is misplaced.

■ In addition to the above, it is well settled that in order to prevail on a claim of equitable estoppel, the party claiming the estoppel must show that he "relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that [he] did not know and could not have known that [his] adversary's conduct was misleading." *Frantz, supra,* 51 Ohio St.3d at 145, 555 N.E.2d at 633, citing *Heckler v. Community Health Serv. of Crawford Cty., Inc.* (1984), 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–2224, 81 L.Ed.2d 42, 51.

A review of the record shows that the board's resolution was not adopted until November 14, 1990, and its policy of retroactive reimbursement was discontinued in June 1996. Appellant made its first payment into the fund on November 2, 1989, after the statutory deadline had passed and more than one year before the resolution was adopted. Accordingly, the record does not support appellant's claim that it reasonably relied to its detriment on the board's resolution extending the statutory deadline from October 9, 1989 until December 15, 1990.

Upon consideration of the foregoing, this court finds, as a matter of law, that the board was not estopped from revoking the resolution and denying appellant retroactive reimbursement from the fund on that basis. Appellant's second assignment of error is not well taken.

■ Appellant asserts in its third assignment of error that the board's refusal to grant its application for retroactive reimbursement from the fund violates its right to equal protection. In support thereof, appellant argues that the board irrationally denied reimbursement to appellant, while allowing retroactive reimbursement to other owners and operators who paid the mandatory fees between October 9, 1989 and December 15, 1990.

 Equal protection under the law requires that no person or class of persons shall be denied the protection afforded by laws to other persons or classes in like circumstances. *Nordlinger v. Hahn* (1992), 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1. The Equal Protection Clause does not prevent classifications; it simply forbids laws that treat differently those persons who are in all relevant respects alike. *Id.* A statutory classification, such as the one in this case, "which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clauses of the Ohio and United States Constitutions if it bears a rational relationship to a legitimate governmental interest." *Van Der Veer v. Ohio Dept. of Transp.* (1996), 113 Ohio App.3d 60, 64, 680 N.E.2d 230, 233, citing *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 182. The rational-basis standard of scrutiny is the "most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *Dallas v. Stanglin* (1989), 490 U.S. 19, 26, 109 S.Ct. 1591, 1596, 104 L.Ed.2d 18, 26.

Pursuant to R.C. 3737.91(B), the assurances fees are to be used to reimburse owners and operators for the costs of corrective action, to compensate third parties for bodily injury and property damage in connection with leaking USTs, and to pay interest and principal on bonds issued pursuant to R.C. 3737.90 to R.C. 3737.948. As set forth above, appellant's request for reimbursement was made after the board revoked the resolution. Thereafter, appellant's application for retroactive reimbursement from the fund was denied because appellant did not pay its assurance fees for the 1989 program year pursuant to R.C. 3737.91 and R.C. 3737.92.

Accordingly, regardless of whether other parties were retroactively reimbursed from the fund, the fact remains that the board's refusal to grant appellant's application for retroactive reimbursement was rationally related to the legitimate objectives of enforcing the statutory scheme for the timely payment of assurance fees and the allocation of resources from the fund out of which reimbursements are made. See *Penske, supra.* Appellant's third assignment of error is therefore not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of these proceedings are assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and PIETRYKOWSKI, J., concur.